Good morning, your honors. May it please the court, I'm Jerome Zamos. I'm appearing as co-counsel on behalf of appellants with Odeon Elekoji. This case essentially involves a reduction of the benefit by the city of Los Angeles based upon what we would argue is the characterization and nature of a disability. Counsel, I have a question about that, just the going in question of standing. As I understood it from the district court's opinion, Brown's application for disability benefits was still pending at the time of the district court's decision and there was a hearing set sometime in the future. Is there anything that we have in the record to show us that the determination on his application became final? I believe there is, but in any case, the ultimate question in this case is whether the particular formula that was used based upon deducting from the disability benefits the amount of costs incurred by the city in treating work-related injuries is still an issue that he had a substantial interest in. Well, why if he's not eligible for the benefits anyway, then why would he? Well, he was eligible for the benefits. Well, that's the question. Was he found eligible? Well, the eligibility of the benefit would be determined based upon the determination that he was no longer qualified to serve as a policeman. Right. And that determination had been made. So the threshold issue as to whether he was entitled to a benefit or not had already been determined. So what was the issue that was – first of all, there's another plaintiff. Has he been declared eligible for the benefit? Yeah. Yes, Your Honor. Excuse me. So Brown doesn't matter then? The two individuals. You had Brown, who had sustained multiple injuries during the course of his employment, leading to his various arthritic conditions, which resulted in the fact he was no longer capable of being a police officer. And then you have Whitfield, who as a result of injuries incurred during that event had one of his legs effectively destroyed and he was no longer able to serve as a police officer. So you have two individuals who had been determined are no longer qualified for employment as police officers, which then threshold issue in this case as to whether this is a Title I issue or a Title II issue. It seems fairly clear that under Weyer they can't sue under Title I. Is that right? Well, I would agree with that. So then the question is whether there is some gap category of people who can't sue under Title I and can't sue under Title II. Well, I think here's where we come to the threshold issue. The threshold issue is whether or not this is an employment case or something else. And I think if you take Justice Graber's analysis in Zimmerman, which we tried to point out to the Court, it is not an employment case in the true sense of the word, because as we, I think, have to concede, an employment case involves whether or not somebody is qualified to be employed or not. Well, it doesn't necessarily, but it involves somebody who is a qualified person with a disability, meaning that they could be employed. Correct. And neither of these two individuals would fit into that category by definition. So the question is, what are we talking about? And I think, first of all, the Zimmerman case, which is there are conflicting decisions, which we tried to point out to the District Court and in our brief. In any case, what Zimmerman dealt with was an employee who was terminated. We're not talking about two individuals who were terminated. We're talking about two employees. So we're not talking about whether or not they should or should not be employed. We are talking about whether two individuals who are entitled to a public benefit, in this case a disability benefit. But it's an employment-related public benefit. People who have not been employed would not be even potentially eligible. But taking the standard that you adopted and what we tried to point out to the Court during oral arguments, and we've alluded to this here as well, is that there is a distinction. What makes it an employment case, based on your analysis at 1174 of Zimmerman, is whether it's input or an output. We would suggest that taking your analysis in Zimmerman, this is not an input where the employee wants to give something to the city and it's being denied that benefit. Employment as a category, as a gestalt, is an input. That is, I guess I have difficulty with it in the sense that, but for the fact that they were employees, there would be no claim. But for the? It's like saying that a retirement benefit or a severance payment, really, don't look at the employment. It's like, don't look behind the curtain. I guess I don't see how it's I take the other side of the coin. And it is, but for the fact that they are not employees. So clearly, if this were an employment claim, I think you're right. But the nature of this is we have two individuals who can't be employed. So by the very nature of it, it is not an employee. The most succinct, first of all, I gather ultimately this doesn't matter because you would have a FEHA claim anyway. Is that right? Yes. So it's sort of not worth the time and trouble. Is that right, in a way? Because if you can recover, if you have a theory, you could recover under the California Fair Employment and Housing Act. Well, that's true, too. But unless we can get to stay in court, we can't recover under anything. Well, I understand that. But you probably have a colorable enough claim under the ADA that you wouldn't get bumped. I don't know about that. But we did get bumped. But let's go to the next question. But not on that ground. You got bumped ultimately on the merits on the FEHA. No, no. That's not true. We got bumped very clearly and specifically the threshold issue that was that threw us out of court. If you go to the Well, on page 12 of the government's of the order, he gets to the FEHA issue. He doesn't say I'm not going to get to it because I'm not going to assert jurisdiction. He says you lose. So the question is, why don't you lose the FEHA claim? Or do you lose? Okay. If we get past the threshold issue now, the reason is it's like saying if you're deaf, you can get a benefit. But if you're blind, you can't. In this case, if we had a disability that the city wasn't responsible for covering the cost of, we could get the full benefit. Because these people, particularly in the case of Whitfield, who was a result of having his leg destroyed during the shooting incident, built up enormous medical bills, which effectively wiped out the value of the benefits. So it's like sending a soldier to a war zone and literally Whitfield was sent to a civil war zone in that particular case. He was injured because his medical bills, while he was in the hospital, trying to save his life, save his leg, were so great, and the city put out so much money, they then come back and say, okay, you don't get a disability benefit. And to me, that kind of illustrates what is fundamentally wrong here. You're subtracting not only the maintenance costs of workless comp, but also the medical bills. Yes, but whatever it is, you're reducing the benefit strictly because it's a work-related injury, as opposed to if there's any other kind of disability that this person might have had, which, you know, say was covered under their normal insurance, their employee insurance plan, it wouldn't be reduced in this manner. So you're reducing... So the distinction then isn't based on disability in general, or even the type of disability, but the cause of it. No. The question is, why is that an ADA violation or an HHA violation? Because it is the type. It is based on the characterization. At the end of the day, it is absolutely based on the characterization of the disability. In other words, if they had the exact same injury that, if they had an injury from any other characterization, it wouldn't reduce the benefit. But because they have a particular type of characterized disability, it reduces... But it's not the disability. I understand you're describing it. If he had gotten shot on the, you know, on a recreational hunting trip... Yes. And had exactly the same injuries and exactly the same disability... Yes. He wouldn't have this problem, right? Well, more or less, but he would not have the benefit eliminated. So in other words, because he's injured during the... So it's not the nature... Because he shows up and he's got his legs shot up... Just a minute. So therefore, it is not the nature of the disability, but its cause, the circumstances in which it arose. And the question is, why is that an ADA violation? I'm saying I disagree with all due respect to our argument in terms of whether the semantics are as you characterize it. I still think it goes to the nature of the disability at the end of the day. Thank you. It still is a matter of semantics. And I guess I've used up all my time. You have used up that and then some, but we asked you a lot of questions. Thank you. We appreciate your argument and we'll hear from Mr. Whittemore. Good morning. May it please the Court. Paul Whittemore on behalf of the City of Los Angeles. One of the difficulties in terms of semantics is that counsel is characterizing the situation with respect to the pension benefit and workers' comp as being a reduction of a benefit. It's actually an offset. The city pays for the workers' compensation award. The city pays for the pension benefits. It's not reasonable, and certainly under the Charter section, it is not appropriate for the city to have to pay twice for the same injury. So it's an offset. The problem is it isn't really the same, and that's a little bit disturbing. The money is not for the same thing because the disability benefit, as I understand it, is to compensate for the inability to work, not for medical costs. So if you're actually deducting the part of workers' comp that goes to medical costs, that strikes me as somewhat odd, whether it's an ADA violation or an FEHA violation is another question. But it does look like apples and oranges. Well, part of that disability pension is to cover for the injury. I mean, he's getting paid for the injury. But ordinarily disability insurance does not cover medical costs. It covers the loss of income. And I assume that that's what the disability pension is doing. It's not paying his medical costs, right? For what cost, the injury? Well, no, because that's covered under workers' comp. So the city's paying the workers' comp, and the city's also paying for the disability, which caused the reason for the pension. But he's getting a lifelong benefit. But first you want to subtract all his medical costs, which means he may never even get his lifelong pension. He's going to only subtract the workers' compensation award that the city is paying. So the city's not paying twice. Which has a big chunk of medical costs in it. It could be. It could be. It could be. But he's getting paid for the disability through workers' comp. All I'm trying to say is that it really is, your double-counting argument doesn't really work. Because the workers' comp is partly paying for something that the disability benefit is not paying for. Is that not true? Well, it could be characterized that way. I think that the IRS would look at it maybe a little bit differently. I'm sorry? The IRS might look at it a little bit differently. And the reason why, if the city were to pay for the workers' compensation award and not deduct that from a disability pension, that that would reduce the divide up the part of the workers' comp that's medical from the part that is maintenance. I don't know what the IRS rule is. But it doesn't seem logical to me that they would that that would not be plausible. Because, again, what they don't want is double payment. They want to know that you're paying for the disability. But there isn't double payment under this scenario. I think that's the policy behind the charter section is not to have double payment. I think that's the intent of the letter from the IRS saying that it would be taxable. So I would characterize it as the disability payment also paying for the disability or the injury and the workers' compensation paying for the injury. It could be looked at. Could I ask a clarifying question? Am I correct in understanding that individuals in this situation do have the choice to accept a non-disability ordinary pension that they would be otherwise entitled to without any reduction of the workers' compensation benefits? Yes. Okay. So they can get all the medical benefits and all the whatever else workers' comp pays for and the regular service pension related to their years of service. Their years of service and age because that pension is partially funded by employee contributions. It is a pension that is given for service and for age. It is not a pension given for disability. So there's no compensation for the injury in a regular service pension. So we keep also whether or not you're any person that retires on a service pension would keep the workers' compensation awards whether or not. Both medical part and the. Would keep workers' compensation awards. Yes. Whether or not the retirement was in fact due to a disability, a disabling injury or any other awards. But only if they're eligible for the service pension. Right. If they're eligible for the service pension and they got injured. Do we happen to know whether these particular plaintiffs are eligible for the service pension? I'm sorry. Do we happen to know whether these particular plaintiffs were eligible for a service pension? There is nothing to indicate that in the record. I do not know. One way or the other, we don't know. I found nothing in the record to indicate that they were eligible for a service pension. Okay. In fact, they both elected the retirement disability pension. Which probably means they weren't or that it wasn't more beneficial anyway. That would be the assumption that they made the right choice. Officer Brown's application was still pending at the time that the case was decided. And I think it all goes back to in terms of the ADA, I think that Judge Graber is correct that we cannot separate the disability. Do you really think that what Congress meant in the ADA was that there's a group of people who can't sue under Title I and can't sue under Title II? No. They're former employees, but they're so they can't get into Title II, but they are sufficiently employee. No. They're former employees, so they can't get into Title I, but they're sufficiently employment related that they can't get into Title II. That doesn't make a lot of sense to me. Well, under the application, I understand your point. We've never actually held that, right? I mean, we've never had one of these, this group in between and had a case in which we've held that the people who are bumped out because of wire are then also bumped out because of Zimmerman. Have we ever held that? No, not that I'm aware of, Your Honor. But under the facts of this case, we are dealing with a situation where the disability pension is a quintessential benefit of employment. Which is why it probably ought to be in Title I, but we've held it isn't. Correct. So it seems, at least at that point, that if that's how we're looking at it, we're looking at it that these are not, in fact, to be regarded as employees for purposes of Title I, then I don't know why they don't therefore be treated that way for purposes of Title II, i.e. is not as employees. Because it does not fall under Title II because it's not a service program or activity of a public entity. It's not an output of a public entity. Well, it's a service to a subgroup of people. The subgroup of people who are former employees are going to they didn't pay for them. I mean, one key thing is they did not pay for this disability benefit. So it is as if it is similar to another, a public benefit for welfare or something. It's just to a certain subgroup of people, people who used to work for the city. Well, I would contend that it does not fall in the output analysis of a Title II claim. Well, why is it different than a general, than a welfare benefit from the city? Because it is not applicable to the general public. But it's applicable to people who for ADA purposes are not being treated as employees. So they must be members of the general public. They're not employees. Well, the purpose of the LAPD is to provide law enforcement service and protection to the public. That is the output of the LAPD. It's not a disability. This is a city pension, as I understand, a city benefit for a subgroup of people who the city chooses to give a benefit to. That's correct. It could be people who have small children, but it happens to be people who used to be public policemen. Well, it's a benefit that is given to people who have provided something to the city in the form of their service and in the form of their having been injured in the line of duty. And so the city provides a benefit, a lifetime disability benefit, because they can no longer perform that duty. So it is not the type of service, program, or activity of the city to give to anyone who is not provided service to the city. Do we need to reach this issue? Is it necessary? Do you understand the district court to have essentially asserted supplemental jurisdiction under the Fair Employment Act? Well, I guess we would have to reach it, because even if you lost it, even if they lose under the Fair Employment and Housing Act, I guess it's conceptually possible they could win under the ADA. So maybe we do need to reach it. Well, we do need to reach the FEHA. The district court did apply supplemental jurisdiction. It did. It did rule on the FEHA's claims. Right. Okay. But do we need to reach the ADA issue? I think we do. Well, you can reach it in one of two ways. Number one is following the Zimmer case. Right. Which classifies this. No, what I'm asking is do we need to reach this gap issue, the fact that there's a, or could we simply say ADA doesn't matter? But I don't think we can say ADA. I don't think it's necessary to reach it. Why not? The Zimmerman are under wire. This is one of those cases where maybe they did fall through the graphs. Obviously Congress cannot anticipate every scenario when it drafts the statutes. And this is one statute where the plaintiffs do not fall under either one of the statutes. But either way, if you do look at it as a disability case, you look at it the same way as you did with FEHA. This is not a discrimination based on disability. My point is we cannot reach it by simply saying it doesn't matter whether this falls under Title I or Title II because they lose anyway. I think we can look at it. Yeah, I think it does matter whether it falls under Title I or Title II. And I think it falls under Title I and not Title II. And even if you were to reach it under Title II, it's not a discrimination based on disability. It's not a discrimination because the person who is disabled can get the same benefits under the service plan if they're eligible for it or under the disability pension plan. Either one. There's no difference. If you're a disabled individual, you're not discriminated against. If you're not disabled, you can't get the disability. It is a distinction between people who are disabled on the job and people who are not disabled on the job. That is a distinction, actually, because people who have exactly the same injury but not on the job will get the full disability benefit. So if they both walk in, you know, hobbling in the same fashion and neither of them can work, the one who's injured on the job is going to get massively less in disability benefits than the person who was injured in a shooting accident. Is that much right? Well, a person that is not injured on the job is not going to get the disability benefits, period. Not get a disability benefit? Why not? Not under the pension plan. You mean you have to be injured on the job to get the disability benefit? You have to be. It has to be a work-related injury, a service or work-connected injury. Oh, to get the disability. So the hypothetic we were talking about before was just not true. That's correct. It's not. It's a disability pension. It's a pension for someone who's injured on the job. Well, ordinarily a disability benefit in ordinary people language does not have to be injured on the job. If I am injured down the street and I have a disability benefit, ordinarily I can get the disability benefit. But you're saying this is not that kind of a plan. You have to be injured on the job to get the disability benefit? Correct. It has to be found that there was a service-connected or injury on the job and that the injury precluded you from doing your job. That's the determination that has to be made. That's the determination that was made in both cases. I see. Whitfield's application was approved. Brown's had not yet been determined. I think that's pretty clear in the facts. That's helpful. Thank you, counsel. Thank you. And you may have one minute for rebuttal. Is that true or not true? My understanding is the criteria is a person who, as a result of an injury, is no longer capable of performing the services. It doesn't have to be a work-related injury? Well, I think there has to be a work-related component. But the extent of the injury still comes down to this. You could have a person who is no longer capable because of various types of injury who is no longer able to serve as a policeman. And in addition to that, the disappearing leg or the defective leg is caused by something else, doesn't have to reimburse the city for all the costs. But in this case, they do. In this case, however, the real difficult issue that was raised is the issue of the choice of pensions. Depending on when the injury resulting in the termination of services occurs can make a drastic difference in the value of the benefit. So if this takes place at a point in the policeman's career when he doesn't have a very long history or his history is not sufficient, he is forced because he can no longer work and earn ongoing credits to take a retirement right here and now. And he's therefore, and I believe this is one of the issues that was discussed in the Second Circuit case we cited out of the city of New York, he's forced to take a benefit before he has achieved the full value of his traditional retirement benefits. So I think that's an argument that is a red herring. You force a person into retirement for whatever reason and then say because he's now forced to take an early retirement because he's been so badly injured and no longer able to perform the services and here because his injury is while he was serving the public and it's so severe, we literally wipe out any value. And it really is no different than sending a soldier off to Iraq, having him come back and saying we're drumming you out of the Corps and by the way from whatever you've got from us as a result of your service to the country, this case service to the city, give it all back. We're not giving you nothing. Thanks, Counsel. We understand your position. The case just argued is submitted.
judges: Hall, Graber, Berzon Cjj